RICHARD C. DOOM AND VICKI W. DOOM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MELBA G. DOOM, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Doom v. Commissioner
Docket Nos. 11356-78, 11462-78.
United States Tax Court
T.C. Memo 1980-561; 1980 Tax Ct. Memo LEXIS 22; 41 T.C.M. (CCH) 576; T.C.M. (RIA) 80561; December 17, 1980
Richard C., Vicki W., and Melba G. Doom, pro sese. Irene Scott Carroll, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in the Federal income tax of petitioners as follows: Petitioner
Taxable year
Amount of Deficiency
Melba G. doom
1974
$ 2,668
Richard C. and
Vicki W. Doom
1974
4,535
The issue is whether and to what extent certain payments made by petitioner Richard Doom (Richard) to Melba Doom (Melba), his ex-wife, during 1974 constituted "periodic payments" *23 for purposes of sections 71 and 215 of the Internal Revenue Code of 1954. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Richard and Vicki Doom (Vicki) filed their joint Federal income tax return for their taxable year 1974 with the Internal Revenue Service Center, Fresno, California. At the time they filed their petition herein, they resided at Saugus, California. Melba timely filed her Federal income tax return for her taxable year 1974 with the Internal Revenue Service Center at Fresno, California. She resided at Woodland Hills, California, when she filed her petition herein. Richard and Melba were married in 1945. In 1969, they entered into a written separation agreement, in which Richard promised to pay Melba, commencing in 1970, $ 650 per month for her support and maintenance, and $ 250 per month for the support of their daughter Susan during her minority. Richard agreed, for so long as their son Robert attended Harbor College, to provide at least *24 $ 65 per month for his rent (unless Robert lived with Melba), $ 100 per month allowance, and to pay for his books and fees. Richard also promised to pay additional child support if some or all of the sons were to take up permanent, full-time residence with Melba during their minorities. The amount of this additional support was to be agreed upon by the parties. On April 6, 1974, Richard and Melba entered into the following agreement: I agree to pay 1/2 of total income to Melba G. Doom to total of $ 48,000 present income, 1/2 being $ 24,000 approx. /s/ R. C. Doom /s/ Melba G. Doom Richard and Melba's marriage was finally dissolved in November 1974. However, issues of personal support and property division were reserved and not settled until the entry of a further judgment in 1975. During 1974, Susan and Robert resided with Melba. Susan was 17, and Robert 24, years of age for most of the year. During the year, Robert attended a junior college, but not Harbor College. During 1974, Richard paid to Melba, by check, a total of $ 19,034.76, as follows: Month of 1974
Amount of Richard's
Payments to Melba
January
$ 1,162.50
February
1,160.00
March
1,163.00
April
1,882.00
May
1,883.00
June
1,810.00
July
1,837.26
August
1,837.00
September
1,500.00
October
1,800.00
November
1,500.00
December
1,500.00
TOTAL
19,034.76
*25 Melba, for 1974, included only $ 7,800 of this amount in her gross income. Richard and Vicki Doom, however, deducted the entire amount from their gross income. The Commissioner determined that the full amount was includible in Melba's gross income, and that only $ 7,800 was deductible by Richard and Vicki. OPINION The pertinent parts of section 71 provide: (a) GENERAL RULE.-- (2) WRITTEN SEPARATION AGREEMENT.--If a wife is separated from her husband and there is a written separation agreement * * *, the wife's gross income includes periodic payments * * * received after such agreement is executed which are made under such agreement and because of the marital or family relationship * * *. (b) PAYMENTS TO SUPPORT MINOR CHILDREN.--Subsection (a) shall not apply to that part of any payment which the terms of the * * * agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. Section 215 provides as follows: (a) GENERAL RULE.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of the wife, *26 payment of which is made within the husband's taxable year. It is clear that the written separation agreement of 1969 (1969 agreement) was in effect at least until April 6, 1974. Under that agreement, $ 250 per month of Richard's payments were designated as support for Susan. Under the agreement, Richard was obligated to make these payments for his daughter in 1974, as she was still a minor. However, he was not obligated to make any payments for the support of Robert, who was no longer attending Harbor College and had attained his majority. Thus, the agreement "fixed" $ 250 of the payments for each of January. February, and March, 1974 as child support for purposes of section 71(b). As to payments made after the April 6, 1974, agreement, Melba and Richard differ. Melba acknowledges the validity of the agreement, but claims that, after August 1974, Richard breached it by lowering his monthly payments to $ 1,500.00. She accordingly claims a right to "revert" to and benefit from the terms of the earlier agreement, so that $ 250 per month of the payments for April through December qualified as child support. Richard contends that the April 6, 1974 agreement (1974 agreement) *27 was valid and superseded the 1969 agreement, and that therefore none of the payments after March were "fixed" by an applicable agreement as child support. We must agree with Richard. It is clear that both Melba and Richard regarded the 1974 agreement as binding. Richard's payments sharply increased following March, and Melba accepted these payments. The 1974 agreement was inconsistent with the support provisions of the 1969 one because it required much higher payments. It appears that Melba was willing to sacrifice the tax advantages given her under the old agreement in return for increased payments. Thus, in our view, the 1974 agreement superseded the 1969 one, at least with regard to support payments. As the 1974 agreement did not specifically provide for child support payments, the amounts paid by Richard to Melba after February 1974 were fully includible in Melba's gross income and deductible by Richard and Vicki. The fact that Richard may have breached the 1974 agreement does not render it void or revive the 1969 agreement, but merely gives rise to an action for damages by Melba. To summarize: of the $ 19,034.76 paid to Melba by Richard in 1974, $ 19,034.76 - $ 750 *28 = $18,284.76 is includible in Melba's gross income and deductible by Richard and Vicki. The 1969 agreement "fixed" $ 750 ($ 250 for each of the first 3 months of 1974) as child support which sum is therefore neither includible in Melba's gross income nor deductible by Richard and Vicki. To reflect the foregoing. Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩